# DUPLER'S ART FURS, Inc., v. STATE TAX COMMISSION.

No. 6808. ·Decided September 17, 1945. (161 P. 2d 788.)

Rehearing Denied October 31, 1945.

See 37 C. J., Licenses, sec. 116; computation of sales tax, note, 135 A. L. R., 1485. See, also, 47 Am. Jur., 218.

*White, Wright & Arnovitz*, of Salt Lake City, for plaintiff.

*Wayne Christoffersen* and *Aldon J. Anderson*, both of Salt Lake City, for defendant.

McDONOUGH, Justice.

Certiorari to review assessment of sales tax and use tax. Plaintiff's position, to the effect that such deficiency was improperly computed by the State Tax Commission is founded on three contentions: (1) The Commission erroneously included in the purchase price the amount of the Federal Luxury Tax. (2) It erred in refusing to allow an offset of certain overpayments against underpayments. (3) The assessment of a penalty of 10% of the deficiency by the Commission was unwarranted. We shall consider these contentions in the order stated. The salient facts will be recited in connection with the problem considered.

Plaintiff is a retailer of furs. Part of its business is interstate commerce. In computing the deficiency, the Commission allowed 71% of the total sales on which sales tax had not been collected from customers as exempt sales in interstate commerce. On the balance of such sales the Commission included as part of the retail purchase price upon which the 2% tax was assessed, the amount of the federal luxury tax imposed prior to April 1, 1944. Plaintiff, as stated above, questions its right so to do. We are, therefore, called upon to determine the meaning of "purchase price," as the term is used in our Sales Tax Act, and incidental to such determination, to examine into the nature of the Federal Luxury Tax.

Sec. 80-15-2(j), U. C. A. 1943, part of our Sales Tax Act, provides:

"The term 'purchase price' means the price to the consumer exclusive of any tax imposed by the federal government or by this act."

The pertinent parts of Title 26, Chapter 19, U. S. C. A. Int. Rev. Code, "Retailers' Excise Taxes (New)," relating

to luxury taxes on furs, as amended by Chap. 9A, sec. 1650, Feb. 25, 1944, are as follows:

"Sec. 2401. Tax on furs. There is hereby imposed upon the following articles sold at retail a tax equivalent to 10 per centum [now 20 per centum] of the price for which so sold: Articles made of fur on the hide or pelt, and articles of which such fur is the component material of chief value."

"Sec. 2403. Return and payment of retailers' excise taxes.

"(a) Every person who sells at retail any article taxable under this chapter shall make monthly returns under oath in duplicate and pay the taxes imposed by this chapter to the collector.

\* \* \* \* \*

"(c) In determining, for the purposes of this chapter, the price for which an article is sold, there shall be included any charge for coverings and containers of whatever nature, and any charge incident to placing the article in condition packed ready for shipment, but there shall be excluded the amount of tax imposed by this chapter, whether or not stated as a separate charge. \* \* \* There shall also be excluded, if stated as a separate charge, the amount of any retail sales tax imposed by any State or Territory or political subdivision of the foregoing, \* \* \* whether the liability for such tax is imposed on the vendor or the vendee."

It is, of course, conceded by the Commission that the luxury tax is a Federal tax, but it is argued that it is not such a tax as was contemplated by the legislature in enacting the exclusion provision of the state statute quoted hereinabove. It points out that the luxury tax is an excise tax, that as a rule excise taxes are hidden taxes, which become a part of the purchase price, that it would be impossible to compute the part of the purchase price which they represent. Hence excise taxes were not intended to be excluded in determining the basis of the tax. The premise stated relative to hidden taxes may well be conceded for the purposes of this opinion. But the conclusion by no means follows. The fact is that the luxury tax is not hidden. Its presence is stridently announced to every purchaser of a luxury—whether the article be a bottle of after shaving lotion or a diamond brooch. It consequently does not fol-

low that because the legislature did not intend the exclusion from the basis of the tax, hidden excise taxes that they must have intended to include in such basis every tax though its presence and amount be definitely known both to vendor and vendee simply because it is correctly designated an excise tax. It will be noted from the quoted portion of the Federal statute involved, that the luxury tax is not included within the definition of "the price for which an article is sold," that the retailer may treat the tax as a separate charge, that the tax is not payable until a retail sale is made.

But it is urged by the Commission that at the time the state sales tax was enacted there was no federal luxury tax. We are asked to reject the thought that the legislature possessed such clairvoyant power as to envisage its enactment. We are asked nevertheless, in a later portion of its brief, to hold that the term "any tax," used in the statute means a tax "having its incidence on the consumer." To do so, we must ascribe to the legislature such clairvoyant power as to legislate with respect to a federal tax not subsequently enacted but deny the possession of such faculty relative to one which subsequently was passed.

We need indulge in no such speculation. The palpable fact is that, if the words be given any meaning, they must be held to contemplate at least any Federal tax which is based on the very transaction with which the legislature was dealing—a sale of personal property at retail—and which Federal tax if included in the definition of "purchase price" upon which the tax is based would increase that basis. We so hold.

It should be noted, at this point, that prior to April 1, 1944, a rule or regulation of the commission required the inclusion of the amount of the Federal luxury tax in determining the purchase price of an article subject to such tax. The regulation was changed so that since such date it has not been so required. The deficiency assessment here involved, hence, is based on returns made for periods prior to such date, and include the years 1941, 1942, 1943 and

part of 1944. The Commission's contention here relative to the meaning of the quoted section of the statute is based on its position that its former regulation rather than that now in force correctly construed the law. Its more mature reflection, we are convinced, reached the right result; the present regulation accords with the intent of the law. Any deficiency assessment levied against the plaintiff for any accounting period, which is based upon plaintiff's failure to include 2% of the amount of the luxury tax in its return, in cases where such an amount was not collected from the purchaser, is hence erroneous and must be vacated.

We proceed to a consideration of plaintiff's second ground of complaint. ■

In some cases prior to April 1, 1944, plaintiff collected sales tax from some customers on the amount of the Federal luxury tax as well as the actual retail price, and remitted all tax collections to the commission. In some instances no tax at all was collected on taxable sales, plaintiff claiming that such sales were sales in interstate commerce. Some 30% of these sales were found by the Commission to have been consummated entirely within the state, so the sales involved were held taxable.

It is the contention of plaintiff that any deficiency resulting from a failure to report and remit the amount of the taxes which it had failed to collect on taxable sales should be offset against any remitted amount over 2% which resulted from using the luxury tax as a part of the tax base. It is not clear from its brief or from its contention before the Commission whether it claims it might offset such "overage" remitted during one reporting period against a shortage in another.

The commission takes the position that no credit may be allowed for collections which the vendor had no legal right to exact. The wording of the statutes is therefore of controlling importance. The applicable portions of Sec. 80-15-5, U. C. A. 1943, read as follows:

"Every person receiving any payment or consideration upon a sale of property or service subject to the tax under the provisions of this act, or to whom such payment or consideration is payable (hereinafter called the vendor) shall be responsible for the collection of the amount of the tax imposed on said sale. The vendor shall collect the tax from the vendee, but in no case shall he collect as tax an amount (without regard to fractional parts of one cent) in excess of the tax computed at the rates prescribed by this act. The tax imposed by this act shall be due and payable to the state tax commission bimonthly on or before the fifteenth day of the month next succeeding each calendar bimonthly period. Every vendor shall on or before the fifteenth day of the month next succeeding each calendar bimonthly period file with the commission a return for the preceding bimonthly period. The return shall be accompanied by a remittance of the amount of tax herein required to be collected by the vendor for the period covered by the return. *The tax as computed in the return shall in all cases be based upon the total sales made during the period including both cash and charge sales.* (Italics added.)

\* \* \* \* \*

"If any vendor shall, during any reporting period, collect as a tax an amount *in excess of two per cent of his total taxable sales,* he shall remit to the commission the full amount of the tax herein imposed and also such excess; and if any vendor under the pretense or representation of collecting the tax imposed by this act shall collect during any reporting period an amount in excess of two per cent of his total taxable sales, the retention of such excess or any part thereof, or the intentional failure to remit punctually to the tax commission on the full amount required to be remitted by the provisions of this act, is declared to be unlawful and shall be punishable by a fine of not exceeding $1,000 or by imprisonment for not to exceed six months or by both such fine and imprisonment." (Italics added.)

The vendor is by virtue of the aforesaid enactment made responsible for collection of the sales tax. He is prohibited from collecting

"as tax an amount \* \* \* in excess of the tax computed at the rates prescribed"

in the act, disregarding fractional parts of one cent. He must make returns *bimonthly* (unless pursuant to a portion of the statute not quoted, other arrangements are made

with the commission), which returns shall be accompanied by a remittance of the

"amount of tax herein required to be collected by the vendor for the period covered by the return. The tax as computed in the return shall in all cases be based upon the total sales made during the period."

It will be noted that the period referred to is the one for which the vendor is required to file a return and make remittance of the sales tax.

"If any vendor shall, during any reporting period, collect as a tax an amount in excess of two per cent of his total taxable sales, he shall remit to the commission the full amount of the tax herein imposed and also such excess."

It is clear from the foregoing that the vendor may not offset against a deficiency in one reporting period an overcollection in another reporting period. Should he be permitted to do so, then the provision requiring that all amounts collected during a reporting period be remitted to the Commission could be purposely defeated by refraining from collecting an amount equal to the excess over 2% in a subsequent period and employ such device to secure an advantage over a competitor.

May overcollections such as are here instanced, resulting from collection of two per cent of the federal luxury tax, be used in a given reporting period as an offset against amounts which should have been collected on particular sales, but were not? From one point of view it appears that such should not be permitted. The vendor should not be permitted to use the money of a taxpayer who has overpayed the tax to offset the failure of the vendor to collect from another taxpayer. Yet we are bound by the wording and intent of the statute. It is to be remembered that the vendor is a tax-collector. His duties as such are set out by statute. It is clear therefrom that all taxable sales are aggregated for the purpose of making returns. The vendor-collector is made liable for the payment of 2% of his total taxable sales during a period whether or not he collects

such amount. He must remit to the Commission 2% of the taxable sales or his total collection of sales tax whichever is the greater. This appears from the statute to be the sum of his duties, though it is provided that he must collect 2% of the purchase price of each article sold and no more.

It is argued by the Commission, however, that the provisions of the statute relative to overcollections were enacted merely to take care of the overplus resulting from the collection of fractional parts of a cent. But those provisions were retained as a part of the statute when provision was made for the payment of such fractional parts of a cent by tokens. Furthermore, there is nothing in the statute which indicates that such was the legislative intent. Indeed there are factors of common knowledge which argue that it was not.

The likelihood of a vendor or his employees making errors in computing the proper tax, especially in cases where a great volume of small sales at purchase prices in odd cents are involved, may well result in undercollections on some sales and overcollections in others. In some instances such vendor, or his employees may be in error in adjudging a particular sale to be taxable or exempt. It appears from the statute that the legislature took such factors into consideration in enacting the statute. It adopted a practical method of computation of the amount of the tax due from a vendor during a reporting period by basing such on the total taxable sales. It apparently aimed at burdening the vendor as little as possible in so far as is consistent with collection of the total amount of taxes resulting from taxable sales made in the state. To insure the latter it made the vendor liable for 2% of his total taxable sales. To prevent the practice of charging an excess of 2% to his own enrichment it required that the vendor remit any excess collected over 2% of his total taxable sales during any reporting period to the commission.

It follows from the foregoing that the plaintiff would be entitled in the computation of the deficiency assessment by the commission, to offset against the amounts it failed to

collect and remit during any reporting period the amount of any excess collected and remitted for such period.

The final contention of plaintiff is to the effect that the 10% penalty assessed by the Commission is unwarranted. Such penalty is authorized by Sec. 80-15-8, U. C. A. 1943, if any part of a deficiency

"is due to negligence or intentional disregard of authorized rules or regulations with knowledge thereof."

It would serve little purpose to detail the evidence upon which the commission concluded that the failure of plaintiff to collect and remit the tax on certain claimed interstate sales justified the assessment of the penalty under the quoted provision. Suffice it to say that as to the transactions upon which the penalty was assessed the commission was warranted in finding that the plaintiff was either negligent or acted intentionally in failing to collect and remit a tax which it knew it had the duty of collecting.

For the reasons hereinabove stated, the order of the Tax Commission is vacated, and the matter is remanded to the commission with directions to proceed in accordance with the views herein expressed for the purpose of determining any deficiency in sales tax and the penalty and interest thereon.

WADE and WOLFE, JJ., concur.

LARSON, Chief Justice (concurring in part, dissenting in part).

I concur in vacating the order of the Tax Commission and remanding the matter for further proceedings. I concur in most of the conclusions reached in the prevailing opinion and in the reason given therefor. More specifically I concur in the holding that the term "purchase price" upon which our state sales tax is computed, is the price the purchaser pays, not including the federal luxury tax. In other words, the federal luxury tax is excluded from the purchase price in computing the state sales tax. I concur in the hold-

ing that the assessment of a 10% penalty was warranted. I also concur in the holding that the retailer cannot set off against a deficiency in tax collections, any overcharges or excess remitted by him in a prior reporting period.

But I must *dissent* from the holding that the retailer can under the law offset against any undercollections the overcharges or excess collected on other sales during the reporting period. The tax is specifically levied on the consumer; the retailer is *required* to collect the tax from the purchaser (consumer) on each sale (not merely to remit 2% of his sales); the statute expressly requires the retailer to remit to the state any and all overcharges or excess collected on any sale, in addition to the regular sales tax. As pointed out by Mr. Justice McDONOUGH this is to prevent discrimination between customers. Otherwise a designing retailer could overcharge on some sales and knowingly not collect on others, to meet competition from other sources. Such conduct is not fair dealing either with the overcharged customer nor with the competing retailer. To read any such interpretation into an act as specific on the matter as ours, is far beyond the elastic powers of the English language and of judicial interpretation, as I understand them.

TURNER, J., concurs in the views expressed by Mr. Chief Justice LARSON.